Chester BRADLEY *v.* STATE of Arkansas

CA CR 83-2                                    651 S.W.2d 113

Court of Appeals of Arkansas
Opinion delivered June 1, 1983

*Murphy & Carlisle,* by: *John William Murphy,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

Toм GLAZE, Judge. Appellant was charged by amended information with Theft by Receiving and Burglary. He was tried and convicted by a jury on both charges and sentenced to a total of thirty years. Appellant argues four points for reversal.

Appellant's first two points were not properly preserved at the trial below, so we are unable to consider them here. First, appellant argues that during the testimony of a key defense witness, the trial judge made an impermissible comment that could "only be interpreted as meaning that the trial court thought the witness was lying." Appellant

contends that the judge's comment on the evidence violated Article 7, Section 23 of the Arkansas Constitution. The appellant, however, failed to object to the judge's comment, and that failure precludes us from considering that matter as a basis for reversal on appeal. *See Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980); *Waters v. State*, 271 Ark. 33, 607 S.W.2d 336 (1980).

Secondly, appellant argues that the trial court erred in refusing to let a defense witness testify. The witness, appellant's ex-wife, was called after a State's witness testified that he had delivered to appellant certain confederate money that had been stolen from a doctor's house in Centerton, Arkansas. This money was found in appellant's possession at the time of his arrest. The trial court denied appellant's request to call his ex-wife because the witness sequestration rule had been invoked prior to the proceedings, and the ex-wife had been present during the entire trial before the request was made. Appellant failed to proffer any of the witness's anticipated testimony, and it is well settled that there must be a proffer of the evidence that is improperly excluded before an appellate court can predicate error on its exclusion. *See* Rule 103 (a) (2) of the Uniform Rules of Evidence, and *Parker v. State*, 268 Ark. 441, 597 S.W.2d 586 (1980). Without the proffered testimony, we can only speculate regarding what appellant's ex-wife might have said. This is especially true when we consider the State's evidence which already had been presented before appellant's ex-wife was called as a witness. For instance, one officer testified that he asked appellant where he acquired the confederate money, and appellant responded that he "had it forever" but that his ex-wife "could not verify that he had [owned] the money." Thus, under these facts, we cannot assume that the witness's testimony would have helped appellant's case nor that any prejudice resulted from its exclusion.

For his third point, appellant argues that the convictions for Burglary and Theft by Receiving were not based on substantial evidence. We find no merit in this contention because our review of the record reveals ample evidence connecting the appellant to the crimes with which he was charged. For instance, the State showed that the home of Mr.

and Mrs. Richard Daniels was burglarized on January 5, 1981. Items stolen from the Daniels' residence on January 5 undisputedly were found at the appellant's residence in the dresser drawer of his bedroom. Although the proof indicated the appellant did not personally enter the Daniels' home, witnesses testified that appellant participated in planning the burglary. The State also presented evidence that appellant's role was to "fence" or sell the stolen property taken from the Daniels' residence. We believe this evidence alone showed appellant participated in the Daniels' burglary and knowingly received the property taken in that crime. Other evidence bearing on appellant's guilt is discussed in our review of appellant's next argument.

Appellant, in his last point, contends the trial court erred in allowing certain witnesses to testify, implicating appellant in burglaries committed both prior to and after the Daniels' burglary with which he was charged. Appellant argues that these other crimes were offered only to show the appellant was a bad person, and that such inadmissible evidence was prejudicial and confusing to the jury. In support of his argument, appellant cites *Rios* v. *State*, 262 Ark. 407, 557 S.W.2d 198 (1977).

The major distinction between *Rios* and the instant case is that here the State proved that appellant was a part of a burglary-theft ring that operated in the Benton County, Arkansas, area. Appellant, age thirty years, was the oldest of at least five men who participated in a host of burglaries over a two-month period, commencing in December, 1980. Several State's witnesses, who had assisted appellant in these burglaries, testified that the burglaries were conducted in essentially the same manner. They said that appellant planned the burglaries and fenced the stolen property and that the other four men either drove the car or entered the homes to steal the property. After each burglary, the men met in appellant's apartment where appellant selected the stolen items he would fence. He placed those items in a heating pad cover which he kept in his bedroom chest of drawers. A coat, gloves and glass cutter used in the burglaries were also kept in appellant's apartment. When the police searched appellant's apartment and arrested him for the Daniels' burglary, they found all of the foregoing items in

appellant's bedroom and living room. They also discovered jewelry in appellant's heating pad cover and confederate money in his dresser drawer. The police later confirmed the jewelry had been taken in the Daniels' burglary, and the money had been stolen from a doctor's house shortly after the Daniels' crime.

At trial, the court, relying on Rule 404 (b) of the Uniform Rules of Evidence, admitted evidence concerning other burglaries in which appellant participated. Such evidence was admitted for the sole purpose of establishing knowledge, intent and mode of operation. We believe the court was correct. Rule 404 (b) provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In a recent 404 (b) case, the Arkansas Supreme Court upheld the admission of a defendant's involvement in a stolen car ring in order to show his motive for killing a participant who was involved in the theft scheme. *Edgemon* v. *State*, 275 Ark. 313, 630 S.W.2d 26 (1982). In an earlier case, the Supreme Court found that an accomplice's testimony that implicated the defendant in other car thefts was not prejudicial error because it went to intent and corroborated the accomplice's statement. *Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980). The Court in *Price* noted that the trial judge has wide discretion in deciding issues relating to the admissibility of other crimes evidence, and he will not be reversed on appeal unless he has abused such discretion.

The State never attempted to show appellant committed the Daniels' burglary by physically entering the home and stealing property. Rather, the State's case revealed that appellant was an accomplice in the burglary because he planned it. Under such circumstances, we believe the trial court correctly allowed the State's witnesses, who were

involved or had knowledge of the Daniels' burglary, to testify that appellant's role was to plan the burglaries — not to physically enter the respective houses.

We also conclude that the other crimes evidence showed knowledge and lack of mistake. When appellant was arrested, he denied any knowledge of the jewelry found inside his heating pad cover and at the same time claimed ownership to the confederate money. However, the evidence reveals that appellant had used this same heating pad cover to hide stolen jewelry taken in other burglaries; it also indicated the confederate money had been stolen from a doctor's home in a burglary after the one at the Daniels'. Certainly, such evidence portended that appellant knew the stolen nature of the property which was found in his possession. Although the State's witnesses testified that the confederate money was taken in a burglary *after* the Daniels' crime, this fact in no way diminishes its probative value on the purpose for which it was offered. Other crimes have been held admissible even though they occurred after the crime with which the defendant was charged. *See* 2 J. Weinstein, *Weinstein's Evidence* par. 404[08] (1982); *see also United States* v. *Arroyo-Angulo,* 580 F.2d 1137, 1149 (2nd Cir. 1978); and *United States* v. *McDonald,* 576 F.2d 1350, 1356 n.10 (9th Cir. 1978).

We find no error; therefore, we affirm.

Affirmed.